RICHARD J. OGLESBY *et al.* Exrs.

*v.*

STEPHEN A. FOLEY *et al.*

*Filed at Springfield October 30, 1894.*

1. PARTITION SALE—*purchaser not bound to see to recording of decree.*
A purchaser of land from a master in chancery at a partition sale
is not bound to see to the proper recording of the decree under
which the sale was made, that being the duty of the parties to the
suit.

2. NEGOTIABLE INSTRUMENT—*note taken by master—payment to as-
signee.* The makers of notes given to a master in chancery for land
sold on partition may pay them to an assignee without looking to
the authority of the master to assign the notes.

3. MASTER IN CHANCERY—*embezzlement of proceeds of notes—sureties
cannot exact second payment.* Where a master forges into a decree a
clause authorizing him to sell notes, and upon sale of the notes em-
bezzles the proceeds, his sureties, upon making good the embezzle-
ment, cannot, by a bill for subrogation, compel the makers to pay
the notes a second time.

4. SUBROGATION—*when no right of, in master's sureties.* In such case
the distributees in the partition suit have no rights against the
makers of the notes to which the sureties on the master's bond
could be subrogated.

WRIT OF ERROR to the Appellate Court for the Third
District;—heard in that court on writ of error to the Cir-
cuit Court of Logan county; the Hon. CYRUS EPLER,
Judge, presiding.

Mr. E. D. BLINN, for the plaintiffs in error :

The powers and duties of masters in chancery are
purely ministerial, and are confined to executing the de-
crees and orders of the court. Rev Stat. chap. 90, sec. 6 ;
*Hards* v. *Burton,* 79 Ill. 509.

The payment of the notes to one not entitled to receive
them was not a satisfaction of the notes, the maker of
a note being bound to know that the person to whom he
pays is authorized to receive it. *Greenwood* v. *Keator,* 9
Bradw. 183 ; *People* v. *Johnson,* 100 Ill. 543 ; *People ex rel.* v.
*Smith,* 43 id. 219 ; *Holmes* v. *Field,* 12 id. 424.

The securities upon Wyatt's bond as master in chancery having paid the amount due the Rommell heirs, were entitled to be subrogated to all their rights and equities. *Orem* v. *Wrightson,* 51 Md. 34; *Deering* v. *Earl of Winchelsea,* 1 L. C. in Eq. 60; *Lidderdale* v. *Robinson,* 2 Brock. 159; *Eddy* v. *Trevor,* 6 Paige, 521; *Keokuk* v. *Love,* 31 Iowa, 119; *Hays* v. *Ward,* 4 Johns. Ch. 123; *Rice* v. *Rice,* 108 Ill. 199; *Richeson* v. *Crawford,* 94 id. 165; *Lochenmeyer* v. *Fogarty,* 112 id. 583.

Messrs. BEACH & HODNETT, for the defendants in error:

The notes were made payable to the order of the master in chancery, and the legal title thereto vested in him, with power to assign the same. *Field* v. *Schuffelin,* 7 Johns. Ch. 150; *Thornton* v. *Rankin* 19 Mo. 193; *Fountain* v. *Anderson,* 33 Ga. 372; *Westmoreland* v. *Foster,* 60 Ala. 448; *Zachary* v. *Gregory,* 32 Tex. 452; *Bingham* v. *Culvert,* 13 Ark. 399; *Chitwood* v. *Cromwell,* 12 Heisk. 658; Edwards on Bills, (2d ed.) 241; *Buy* v. *Gunn,* 1 Denio, 108; *Evans* v. *Cramlington,* 2 Vent. 307; *Thornton* v. *Rankin,* 19 Mo. 193.

The notes were negotiable by Wyatt, under the statute. Starr & Curtis' Stat. 1653, 1654; *Walter* v. *Kirk,* 14 Ill. 55; *Walker* v. *Creig,* 18 id. 116; *Hickox* v. *Frank,* 102 id. 660; *Dwight* v. *Newell,* 15 id. 33; *Makepeace* v. *Moore,* 5 Gilm. 474.

Bad faith, alone, on the part of Foley and Davenport, would defeat their right to the notes. *Smith* v. *Cullom,* 5 Bradw. 422; *Comstock* v. *Hannah,* 76 Ill. 530; *Shreeves* v. *Allen,* 79 id. 553; *Murry* v. *Beckwith,* 81 id. 43; *Phelan* v. *Moss,* 67 Pa. St. 59; *Farrell* v. *Lovett,* 68 Me. 326; *Smith* v. *Levington,* 11 Mass. 342; *Doe* v. *Burnham,* 31 N. H. 426; *Mogee* v. *Badger,* 34 N. Y. 247; *Bank* v. *Bank,* 30 Md. 11.

It was the duty of the Rommell heirs to see that the record in their partition case correctly showed the orders of the court. Freeman on Judgments, sec. 77; *Heil and Lauer's Appeal,* 40 Pa. St. 453; *Stevens* v. *Coffeen,* 39 Ill. 148; *Schneider* v. *Seibert,* 50 id. 285; *Sagory* v. *Bayliss,* 21 Miss. 153; *McRaney* v. *Coulter,* 39 id. 390.

Negligence of counsel is that of the client.   *Clark* v. *Ewing,* 93 Ill. 572.

A third party acting in good faith has a right to rely upon the record as it is entered up.   *Goudy* v. *Hall,* 36 Ill. 313; *Hobson* v. *Ewan,* 62 id. 146; *Wadhams* v. *Gay,* 73 id. 415; *Guiteau* v. *Wesely,* 47 id. 433.

Subrogation will never be allowed unless the party applying for it has greater equity than the party opposing it.   *Neff* v. *Millen,* 8 Barr, 351; *Hines* v. *Heller,* 3 W. & S. 401; *In re McGill,* 6 Barr, 504; *McCormick* v. *Irwin,* 11 Cas. 117; *Dent* v. *Wait,* 8 W. Va. 47; *Eaton* v. *Hosty,* 6 Neb. 425; *Miller* v. *Stout,* 5 Del. Ch. 259; *Braught* v. *Griffith,* 16 Iowa, 26; Brandt on Sureties, sec. 265.

Mr. JUSTICE BAKER delivered the opinion of the court:

This was a bill in chancery, filed in the circuit court of Logan county by plaintiffs in error, against defendants in error.   Robert B. Latham in his own right, and the other complainants as executors of the last will of John D. Gillett, deceased, filed this their bill, and alleged that said Latham and said deceased were sureties on the official bond of Wilford D. Wyatt, master in chancery of Logan county; that in an action by Polly Rommell and others against Catherine Rommell and others, in the circuit court of Logan county, for the partition of certain lands, a decree was rendered ordering said Wyatt, as such master, to sell the premises sought to be partitioned, at public sale, for one-third cash in hand and the balance in two equal payments, due in one and two years, with seven per cent interest, to be secured by the promissory notes of the purchaser or purchasers, with personal security and mortgage on premises sold; that said master, after the decree had been approved by the court, and without authority, added thereto the words: "It is further ordered that said master in chancery have, and leave is hereby given, to sell, assign and transfer the mortgage and notes executed to secure the deferred payments, at

their face value, and distribute the proceeds;" that the decree, with such forged addition, was entered of record by the clerk of said court; that the master, by virtue of the decree, sold the land, and for the deferred payments received two notes of Peter Ophardt and Christian Fink, purchasers, each for $2500, due in one and two years, secured by mortgage on the land. It is then alleged that the said master sold and assigned each of these notes to Stephen A. Foley and Ira Davenport, but paid only a portion of the money received therefor to the Rommell heirs and embezzled the balance, and that John D. Gillett, deceased, and Robert Latham, as his sureties as master in chancery, were required to and did pay to said Rommell heirs such remainder, and received from them an assignment of their rights and claims in the matter. The bill further alleged that Fink and Ophardt paid their notes to Foley and Davenport. The prayer is that complainants be subrogated to the rights of the Rommell heirs, "that the assignment of said notes and mortgage may be held and decreed to be entirely void, and that the release of said mortgage of record may be canceled and held for naught; that the court will order and decree that said notes and mortgage are still in full force and effect, unpaid and unsatisfied; that your honor will find and order and decree the amount due to your orators out of the proceeds of said two notes so secured by mortgage, and that said Christian Fink and Peter Ophardt pay to your orators such sum, together with interest at six per cent from the date of payment, and that your orators shall have the right, in case of their failure so to do, to file a supplemental bill, and foreclose said notes and mortgage to enforce the payment of said sum of money so found to be due; that your honor will also order and decree that, in the event said sum of money cannot be realized out of said lands, a personal decree may be entered against Stephen A. Foley and Ira Davenport, compelling them to pay to your orators the amount of the proceeds of said

notes, if said Foley and Davenport shall appear to have received the proceeds of said notes, to the extent that your orators may be entitled to receive said sum as found by the decree of the court, and that orators shall be entitled to execution therefor." Defendants filed a general demurrer, which was sustained, and complainants failing to amend, a decree was entered dismissing the bill at their cost. From a judgment of the Appellate Court affirming that decree this writ of error is prosecuted.

The bill is certainly a very peculiar one, and strikes the mind at once as being without equity. It attempts to compel the defendants Fink and Ophardt to pay their notes a second time, not because of any wrong on their part, but because the party to whom they were made payable, and for whom the complainant Latham and the testator of the other complainants were sureties, embezzled the money received for the same. It is not claimed by the bill that the defendants were in any way connected with the forgery, that they derived any benefit whatever from it, or even had actual knowledge of it. That said defendants Fink and Ophardt executed their notes to the master in chancery in strict conformity to the decree of the circuit court is affirmatively shown by the bill. The complaint is, that they did not see to it that the master had proper authority to transfer the notes to the subsequent holders to whom they made payment. If the question had been between the Rommell heirs and these defendants, the former would be concluded by the fact that it was their duty, and not that of third parties, to see that the decree was properly recorded. (*Stevens* v. *Coffeen*, 39 Ill. 148; *Schneider* v. *Seibert*, 50 id. 284.) If the heirs had any rights against these defendants, when this bill was filed, to which complainants could be subrogated, then the same rule ought to apply to them. But we are wholly unable to perceive upon what principle it can be said the heirs had any such rights as are claimed for them, and hence attach little importance to the foregoing

rule. In our view of the case, the forgery is of little importance. If the decree had been silent as to the right of the master to negotiate the notes, and if it be conceded that, in the absence of such authority, he could not lawfully assign them, (which is conceded only for the argument,) and the master had transferred them and received the money, and the makers had afterwards paid them in full to his assignee without fraud, we know of no legal or equitable principle upon which a second payment could have been demanded.

The argument offered in support of the bill seems to proceed upon the idea that an injury has been suffered by complainants through some wrong of the defendants; but no such wrong is shown. The loss sustained by complainants resulted, not from the manner in which their principal received the money due the heirs, but from his wrongful act in embezzling it after he had received it. He had a right to receive the money. It was his duty to collect it, and the time and manner in which he got it are of no consequence. There is in the bill no claim even that the master's opportunity to misappropriate the money was occasioned by his negotiating the notes, much less that the defendants in any way, directly or indirectly, aided him in committing the embezzlement.

We are unable to view this case in any other light than that of an attempt by sureties on an official bond to visit losses sustained by them by reason of the malfeasance of their principal, upon third parties not shown to have been in any way responsible for such malfeasance. There is no equity in the bill. The circuit court properly dismissed it, and the judgment of the Appellate Court should be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER took no part in the decision of this case.